## Cincinnati, New Orleans & Texas Pacific Railway Company v. Wheeler, By etc.

(Decided October 13, 1914.)

### Appeal from Grant Circuit Court.

Master and Servant—Existence of Relation.—Plaintiff was given a permit to board defendant's engines for the purpose of learning the duties of a fireman. The engineer of the train on which he was riding suggested that he board a heavier train going in the opposite direction, and which would pass a certain point running under "slow orders." Plaintiff, of his own accord, left the train on which he was riding, and in attempting to board the heavier train was injured. Held, that in the absence of negligence on the part of those in charge of the trains, plaintiff assumed the risk of attempting to board the train which injured him, and the railroad company was not liable for such injury.

A. G. DeJARNETTE and GALVIN & GALVIN for appellant.

CLORE, DICKERSON & CLAYTON, O. S. HOGAN, H. C. FAULKNER & SON and P. T. WHEELER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for damages by Elvie Wheeler, suing by his next friend, against the defendant, Cincinnati, New Orleans & Texas Pacific Railway Company, plaintiff recovered a verdict and judgment for $10,000. The railway company appeals.

According to the evidence for plaintiff, Wheeler, who was just 18 years of age, and who had never had any ex-

perience in railroading, applied to defendant's road foreman of engineers for a position as fireman. He stated in his application that he was 21 years of age. The foreman gave him a writing, and sent him from Ludlow to Cincinnati to be examined. He reported at Cincinnati as directed, was examined and vaccinated, and then returned to Ludlow. There he was given another paper to be delivered by him to the superintendent at Danville, Kentucky. The superintendent's chief clerk gave him a paper, dated June 1, 1912, addressed to conductors and engineers, the material parts of which are as follows:

"Bearer, Elvie Wheeler, has instructions to learn the road between Danville and Ludlow for service as fireman. This will be your authority for carrying him and informing him of his duties. This letter is not good on first and second class trains, and is void 10 days after date shown above.

"Conductors and engineers honoring, will make endorsement thereon, showing train number, date and between what points honored, indicating their opinion as to his ability. They will require the applicant to sign his name in the blank provided below, in their presence."

On receiving this authority, Wheeler took passage on one of defendant's engines and returned from Danville to Ludlow. The next morning he presented his authority and took passage on an engine running south. The train was light. The fireman said that it was not a good train to learn firing on. Near Corinth there was a fill. The engineer said they had slow orders for that place. He said they had six mile orders. The engineer also stated that if he was Wheeler he would get off and catch a heavy freight back. He further stated that Wheeler could catch a heavy one either way; that Wheeler could easily get off at the point where they had slow orders and catch another engine. When the engine on which Wheeler was riding reached Corinth early in the afternoon he got off. He then remained about Corinth until the northbound freight came up. When the train approached he held out his hand with the paper in it, but did not remember whether the paper was closed or not. As the train approached he could not tell how fast it was going. He first tried to get on the tender of the engine. He then tried to get on the cars behind, and was thrown under the cars. His foot was cut off, and his leg was afterwards amputated below the knee.

While in Corinth he talked to the station agent, the track walker and James Skinner, and others, and they informed him that there was a slow order over the fill. One person that he talked to advised him to walk to Blanchet, two miles away, and there get on the train. He first tried to get on the train from the turnpike, but didn't get hold. He then crossed over and climbed the fence and there tried to catch the train. He didn't remember how many times he tried to catch it. He did grab hold once and was thrown the next time.

Other witnesses testified to Wheeler's inexperience and to the extent of his injuries.

James W. Skinner, who lived at Corinth, stated that he was present when a conversation took place between Wheeler and the railroad track walker. Wheeler asked if the train slowed up going over the fill, and handed Rogers a piece of paper. Rogers said "They will certainly slow up for you."

For the defendant its engineer and firemen both stated that they did not remember any conversation with Wheeler. They did not suggest his leaving the engine and taking another, or call his attention to the fact that there was a slow order for the fill near Corinth. The fireman stated that the train slowed up at that place to let a signal man get off there. Wheeler said nothing about getting off until he was going down the steps. The engineer and fireman on the northbound train which injured Wheeler stated that they were proceeding north about 6 o'clock, p. m. They had no notice or information that anyone would attempt to get on the train at that place. They saw two men standing in the pike as they approached, but no signal or action that indicated a purpose or design to board the train until the younger man tried to catch the handle bar of the gangway as they passed. The engineer waived him away. He then looked back as far as he could, but saw Wheeler make no effort to board the train. W. T. Rothwell, a citizen, was in the pike with Wheeler when the northbound freight approached. He says that plaintiff made three attempts to board the train while in the pike and was knocked down. He then got over the cow gap and grabbed at the cars again before he caught hold.

Defendant also introduced evidence to the effect that Wheeler was not an employe of the company, but had authority to ride the engine for the purpose of learning

the road and qualifying himself for the position of fireman.

The evidence further shows that the train on which plaintiff rode to Corinth and the train which injured him were both engaged in interstate commerce. The case was tried under the Federal Employers' Liability Act.

Plaintiff predicates his right of recovery on the following facts: He had authority to ride on certain of defendant's locomotives engaged in hauling freight, for the purpose of learning the duties of a fireman. On June 2, 1912, he was ordered and directed by defendant, its agents and officers superior in authority, to run from Ludlow to a point near Corinth, Kentucky, and there leave that locomotive engine and wait for another, and board the latter train at said point and assist in firing and running the engine to Ludlow, Kentucky. He was informed that the latter train would slow up to a speed of six miles an hour or less. In pursuance of said orders, he proceeded to Corinth. There he left that engine and awaited the approach of the train going north. As the train approached he attempted to board same, when he was thrown under the train and his injuries received. His injuries were caused by the negligence of the agents and servants of the defendant company in operating the said train, in that they did not slow up or slacken speed as they were ordered to do, and as he had been told they would do, but ran the same at a speed more than six miles an hour, and at such a speed that he could not board the same in safety. He was young and inexperienced in running and operating an engine and train. As the train approached he could not see it for but a few yards, and after it came in sight he had no opportunity, and could not because of his inexperience, judge and determine that the speed of the train was in excess of what it had been directed to be, and what he had been told it would be.

It is difficult to determine the precise relation which plaintiff bore to the defendant company. Strictly speaking, he was not in its employ, but had a mere permit to board its engines for the purpose of learning the duties of a fireman. However, we take it that if, while on its engines, those in charge of the train failed to exercise ordinary care for his safety, the liability of the company would be the same as if he were in its actual employ. However this may be, it is certain that when off

defendant's engines his time was his own, he could do as he pleased, and he was in no sense subject to the orders and directions of the employes in charge of the train. The permit given to the plaintiff conferred upon engineers and conductors authority to receive him on their trains and to inform him of his duties while on those trains. It in no sense conferred upon them authority to bind the company by ordering him to take passage on other trains not in their charge. Even if it did, the facts of this case fail to show any such order or direction by the engineer of the train proceeding from Ludlow to Corinth. Construed in its strongest light, plaintiff's own statement of what occurred shows that he was told that other trains had slow orders over the fill, that he could easily board one of them, and that the engineer merely said that if he was in plaintiff's place he would board one of the trains. No particular train was designated. It therefore follows that plaintiff, in getting off the engine at Corinth, and in attempting to get on the train which injured him, merely acted on the unauthorized suggestion of the engineer. After getting off that engine his time was his own. He could do as he pleased, and he was in no sense subject to the orders or directions of anyone. It is conclusively shown that the conductor and engineer of the train which injured plaintiff had no notice or information of the fact that plaintiff would attempt to board their train. While they had slow orders for the fill, these orders were for the protection of trains, employes thereof, and the passengers and merchandise which they carried. They were not given for the purpose of enabling anyone to get on trains as they passed. Their mere failure to obey the slow order was not negligence as to one for whose benefit the orders were never intended, and of whose intention to board the train they had no notice or information whatsoever. As the engineer of neither train was guilty of any negligence for which the company may be held responsible, and as neither duty nor interest required plaintiff to get on the train which injured him, it follows that he acted on his own responsibility alone, and, therefore, assumed the risk of injury from the moving train. We, therefore, conclude that the trial court erred in refusing to give the peremptory instruction asked for by the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.